KEIBER et al., Appellants,

v.

SPICER CONSTRUCTION COMPANY, Appellee.

[Cite as *Keiber v. Spicer Constr. Co.* (1993), 85 Ohio App.3d 391.]

Court of Appeals of Ohio,
Greene County.

No. 91 CA 84.

Decided March 25, 1993.

*Cox, Chappars & Keller* and *Ronald P. Keller,* for appellants.

*Jenks, Surdyk & Cowdrey* and *Scott G. Oxley; Wead, Anderson, Phipps & Aultman* and *Richard A. Wead,* for appellee.

FAIN, Judge.

Plaintiffs-appellants, Kingsley and Linda Keiber, appeal from a jury verdict in their favor, in the amount of $11,666, for cost-of-repair damages stemming from the construction of a new home they purchased from defendant-appellee, Spicer Construction Company ("Spicer").

We conclude that although the Ohio Consumer Sales Practices Act ("OCSPA"), R.C. Chapter 1345, does not apply to isolated, "pure" real-estate transactions involving the purchase and sale of land and any pre-existing improvements, it does apply to transactions that include a contract to construct a residence, because (1) buyers of existing homes have the opportunity to inspect their purchases and evaluate the quality and extent of construction services and goods provided, whereas buyers of construction services have nothing to inspect at the time of the purchase and occupy the same position as homeowners buying construction goods and services, who are protected by the OCSPA; (2) there is no substantial difference between residential construction and home improvement contracts, the latter having been held to be protected by the OCSPA; and (3) there is no express authority for the exclusion of residential construction from OCSPA coverage.

Because we conclude that the trial court erred when it determined that the OCSPA had no application to the Keibers' claims, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

I

The Keibers entered into a contract with Spicer for construction of a new house and the purchase of land located in a Spicer development. The original contract price was $154,714, and was subsequently increased several times, with goods and services being added to the bargain by the agreement of the parties.

The new home construction was to be done according to plans submitted by Spicer and approved by the Keibers. The Offer of Purchase contained a warranty that read: "Completed property shall have a limited one-year warranty."

The Keibers filed a notice of exception to an arbitration award in their favor in the amount of $6,100.

The Keibers alleged that Spicer (1) breached the contract; (2) was negligent in the construction of the home; (3) breached an implied warranty of habitability and merchantability; and (4) fraudulently misrepresented that there would be a one-year warranty. The Keibers alleged that these actions violated OCSPA.

The trial court, in a pretrial judgment entry, and without citing or discussing case or statutory precedent, characterized the Keiber's OCSPA claim as "wholly outside the boundaries of extant Ohio case law." The trial court then ordered that all testimony with regard to damages be limited to the "cost of repair" rule, as well as "those consequential damages which would have been in the contemplation of both parties at the time of the breach and which were a direct result of

such breach." The trial court then ordered the Keibers not to produce evidence on, among other things, their legal fees and expenses, and their "loss of use of unfinished work."

The case proceeded to trial, and the jury returned a general verdict of $11,666. From the decision of the trial court, the Keibers appeal.

## II

The Keibers' Second Assignment of Error essentially restates their First; therefore, we consider them both as one. As so construed, the Keibers' sole Assignment of Error is as follows:

"The trial court erred in finding the provisions of Ohio Revised Code Chapter 1345 inapplicable to the claims of the appellants' against the appellee."

R.C. 1345.01 *et seq.* is the Ohio Consumer Sales Practices Act, which has been held inapplicable to "pure" real estate transactions. *Brown v. Liberty Clubs, Inc.* (1989), 45 Ohio St.3d 191, 543 N.E.2d 783. The Supreme Court recognized that R.C. 1345.01 *et seq.* applies to "the personal property and services portion of a mixed transaction involving both the transfer of personal property or services, and the transfer of real property." *Id.* at 195, 543 N.E.2d at 786.

In *Brown,* a real estate developer's use of a direct mail solicitation promising "gifts" in return for a visit to the property for sale was found to be, under the plain language of R.C. 1345.01(A), a consumer transaction. *Id.* at 193, 543 N.E.2d at 785. The Supreme Court noted that the solicitation was deceptive, as found by the trial court, and therefore "it violated Ohio Adm.Code 109:4–3–06 (the prize rule), which as a consequence violated the Consumer Act." (Footnote omitted.) *Id.* at 193–194, 543 N.E.2d at 785–786. Dictum in *Brown* indicated that not extending the Act would "encourage real estate developers to use unfair, misleading and deceptive solicitation methods to entice potential purchasers." *Id.* at 195, 543 N.E.2d at 786–787.

Although the Ohio Supreme Court implied in *Brown* that residential construction was not a "good" for purposes of the OCSPA, we cannot read *Brown* to stand for the proposition that residential construction contractors' services are not covered by OCSPA whenever purchases include land and construction, but are covered, as other courts have held, when purchases include only construction. Such a result would have deserved explicit recognition in *Brown,* and would have required the express overruling of a number of appellate decisions.

It is true that materials incorporated in an improvement to real estate do not constitute "goods" as defined in R.C. 1302.01(A)(8) and 1302.03. *Deaconess Home Assn. v. Turner Constr.* (1984), 14 Ohio App.3d 281, 14 OBR 337, 470 N.E.2d 950. However, by plain meaning, R.C. 1345.01 seems to cover "services"

and "suppliers" of vendor/builders selling residential construction services. The OCSPA was held applicable to the "restaurant" services which accompany the renting of a banquet hall. *Bierlein v. Alex's Continental Inn* (1984), 16 Ohio App.3d 294, 16 OBR 325, 475 N.E.2d 1273. Violations of the Home Solicitation Sales Act, which include a lease or rental, also constitute acts or practices prohibited by the OCSPA. Failure to give an estimate of the cost of repairs, pursuant to Ohio Adm.Code 109:4–3–05(B), of a residential gas leak, was found to be a deceptive act under R.C. 1345.01. *Martin v. Bullinger* (1988), 43 Ohio App.3d 136, 539 N.E.2d 681.

R.C. 1345.01(A) defines consumer transactions as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, franchise, or intangible * * * to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." We recognize that whether the OCSPA extends to a contract for residential construction services is a close question. On the one hand, there is no express exclusion of residential construction services in the OCSPA. On the other hand, land transactions, including those with pre-existing residential structures, have not been deemed covered by the Act.

Although the OCSPA has been deemed not to apply to the sale of a pre-existing residence, we conclude that a contract to build a new home is distinguishable; a residential contractor, especially when engaged in the design, construction, and sales of multiple dwellings, is a supplier of consumer-oriented services for purposes of the OCSPA. Purchasers of one window, or a home-improvement package, or repair services for air-conditioning machinery attached to the buyer's realty, are all considered consumers under Ohio law. The fact that the consumer is also purchasing the land upon which his house will be built would not seem to make either the buyer any less a consumer or the transaction any less a consumer transaction.

The OCSPA has been held inapplicable to residential lease transactions. *Heritage Hills, Ltd. v. Deacon* (1990), 49 Ohio St.3d 80, 551 N.E.2d 125. In so holding, the Ohio Supreme Court cited with approval the Kansas Supreme Court's observation and held that "[c]learly, the Consumer Protection Act covers a very broad area of transactions; whereas, the Residential Landlord and Tenant Act covers one very specific small area of transactions, and is complete within itself for that area. We therefore must conclude that for all transactions within its purview the Residential Landlord and Tenant Act controls and preempts the field." *Deacon, supra*, at 83, 551 N.E.2d at 128.

We cannot read *Deacon* to say that a purchase of construction services is encompassed and preempted by Ohio landlord and tenant law or legislation. *Deacon* was cited with approval in dictum by the Ohio Supreme Court that

"[w]hen the General Assembly desired to exclude real estate from the scope of the 'consumer transaction' definition, it provided that the definition was limited to goods, services, franchises and intangibles." *Shore West Constr. Co. v. Sroka* (1991), 61 Ohio St.3d 45, 48, 572 N.E.2d 646, 648.

*Brown, Deacon,* and *Shore West* are all factually dissimilar to the case before us; they exclude only land sales, residential leases, and "pure" real-estate transactions from OCSPA protection. Whether the OSCPA applies to residential construction services where the vendor/builder also sells land to the buyer appears to be one of first impression in Ohio.

Ohio, along with Kansas and Utah, has adopted the Uniform Consumer Sales Practices Act, the notes of which indicate that while Ohio's version of the Act is a "substantial adoption of the major provisions," it "contains numerous variations, omissions and additional matter which cannot be clearly indicated in the statutory notes." The Texas Deceptive Trade Practices Act is characterized as "having the same general purposes and some similar provisions." 7A Uniform Laws Annotated (1985) 232. In one Texas case, failure of a vendor/builder to make repairs to a new home, already built at the time of purchase, as warranted by an express warranty, was held to be a deceptive trade practice even though repairs were difficult and attempts to repair failed. *Watson v. Bettinger* (Tex.App.1983), 658 S.W.2d 756.

There is an express exclusion of "land transactions" in the official comments to the Uniform Act stating that "[o]n the assumption that land transactions frequently are, and should be, regulated by specialized legislation, they are excluded altogether." 7A Uniform Laws Annotated (1985) 235, Section 2. There is no exclusion of residential construction in either the Uniform Act or Ohio's version. Ohio cases holding that the proper measure for construction damages is the cost-of-repair rule do not mention or consider the application of the OCSPA. The OCSPA is "remedial legislation and, as such, should be accorded a liberal construction." *Renner v. Procter & Gamble Co.* (1988), 54 Ohio App.3d 79, 86, 561 N.E.2d 959, 966.

There is no express authority holding that residential construction is not within the scope of the OCSPA. The First District has held that materials incorporated in a pre-existing improvement to real estate do not constitute "goods" as defined in R.C. 1302.01(A)(8) and 1302.03. *Deaconess Home Assn., supra.* However, the sale of modular homes, consisting of units separately transported to a housing site where they were joined to form one housing unit, has been considered a sale of goods. *Fuqua Homes, Inc. v. Evanston Bldg. & Loan Co.* (1977), 52 Ohio App.2d 399, 6 O.O.3d 440, 370 N.E.2d 780.

As a matter of public policy and consumer protection, we find no compelling reason to hold that a contract to have a home built is the equivalent of a contract to buy land. Instead, Ohio courts have applied the OCSPA to many situations

analogous to residential construction, including mobile homes, modular homes, and residential construction goods and services where there was no concurrent purchase of land.

The OCSPA applies to construction of a garage on property owned by the buyer. *Daniels v. True* (1988), 47 Ohio Misc.2d 8, 547 N.E.2d 425. In *True* the vendor/builder was found to be a supplier as defined by R.C. 1345.01(C). *Id.* at 9, 547 N.E.2d at 426–427.

The OCSPA applies to the sale of mobile homes. *Potter v. Dangler Mobile Homes* (1977), 61 Ohio Misc. 14, 15 O.O.3d 329, 401 N.E.2d 956. Modular homes are also covered by the Act. *Fuqua Homes, Inc., supra.*

A contract for home improvement/remodeling services was found to be a consumer transaction because it involved the sale of goods and services for personal, family, or household purposes. *Lawson v. Mack* (Apr. 19, 1991), Lucas App. No. 90230, unreported, 1991 WL 59890. Similarly, a residential heating and cooling system is not exempted from R.C. 1345.01 because it is affixed to the realty. *Beck v. Trane* (Dec. 19, 1990) Hamilton App. Nos. C890610 and C890623, unreported, 1990 WL 209688.

Although there are similarities between the purchase of an existing residence and the purchase of land coupled with a contract for the construction of a residence, there are reasons to distinguish these transactions in light of the purposes of the OCSPA. The buyer of an existing residence has the opportunity, if not the obligation, to inspect the premises before purchasing them. However, the purchaser of a contract to build a house has no such opportunity; he is dependent upon the integrity and ability of the construction contractor. Because of this distinction, there is a valid reason to extend the protections of the Act to the purchaser of a contract to build a house, even though the Act has been deemed not to apply to the mere purchase of existing real property.

We hold that sellers of residential construction services are suppliers, under the OCSPA, and, likewise, that a residential construction contract is a consumer transaction.

The Keibers' sole assignment of error is sustained.

### III

The Keibers' sole assignment of error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

BROGAN and FREDERICK N. YOUNG, JJ., concur.