DECISION AND JUDGMENT ENTRY
Jill and William Byers appeal the judgment of the Ross County Court of Common Pleas. They argue that the jury's verdict is against the manifest weight of the evidence. Because there is some competent, credible evidence supporting the jury's verdict, we disagree. They next argue that the trial court erred in finding that the Ohio Consumer Sales Practices Act ("OCSPA") was not applicable to this action. Because we find that the OCSPA applies to a contract to construct a new home, we agree. Accordingly, we reverse the judgment of the trial court in part and remand this case for further proceedings consistent with this opinion.
 I.
In 1996, Jill and William Byers filed a complaint against Richard W. Coppel dba Coppel Construction ("Coppel") alleging that Coppel breached their contract and violated the OCSPA. The Byers attached a copy of a building contract signed by Richard Coppel and the Byers to their complaint. The contract provided that Coppel would build a home in Chillicothe for "$151,000 (subject to any additions or deletions hereafter made by agreement of the parties) * * *" on a lot that the Byers owned. The contract also provided that "[i]f any variance or conflict appears between the specifications and the working drawings (plans) the specifications shall take precedence and control." The contract did not contain an integration clause.
In his answer, Coppel filed a counterclaim against the Byers alleging that the Byers had not paid him approximately seven thousand dollars for work he performed under the contract.
At the jury trial, Mrs. Byers testified that she contracted Coppel to build a home for her parents to live in. She asserted that she did not meet Coppel until after the parties signed the contract. She agreed that she requested changes that were worth six thousand three hundred and fifty-five dollars over the contract price, but denied ever discussing with Coppel the substitution of less expensive replacements for microlam headers, TJI joists,[1] steel beams, and trusses. She testified that she moved her parents into the home in November 1994. In January 1995, she returned to the home with the blueprints to inspect the basement and noticed that the microlam header that was in the blueprints was not present in the basement. Over the next few months, Mrs. Byers noticed cracks in the wall and that the floors made noise when walked on. She also noticed that the microlam header was missing from the attic over the garage. Mrs. Byers allowed Coppel to add two steel posts to the basement, but then called in AKM Building Systems, Inc. ("AKM") to assess the property and perform repairs. She paid over seventeen thousand dollars to have AKM repair her house. Mrs. Byers testified that C.K. Satyapriya, a licensed engineer, informed her that her home needs approximately ten thousand dollars in further repairs.
On cross-examination, Mrs. Byers admitted that she authorized some changes in the plans after the contract was signed. Mrs. Byers admitted that AKM put steel posts in where the plans called for wooden posts and that she had okayed changes made to the plans during construction that were never reduced to writing.
Satyapriya testified that he inspected the Byers' home in September 1998 and October 1998. His company prepared a report ("Satyapriya's report") outlining the problems with the home. He identified the following deficiencies of the home compared to the plans: (1) rafters instead of trusses; (2) rafters nailed insufficiently; (3) missing ridge board; (4) two by twelve boards instead of TJI joists. He explained that these inadequacies will cause the walls to crack over time. Satyapriya also testified that the deficiencies in the basement caused the house to settle inward, thereby further cracking the walls. He explained that the floors in the home were not level, varying as much as three fourths of an inch within one room. In his opinion, the home needs new steel I-beams in the basement; re-nailing of its rafters to a new ridge board; and additional roof vents.
On cross-examination, Satyapriya explained that AKM Construction's use of perforated drainpipe caused the moisture in the basement. He also testified that AKM Construction had to jack up the floor to put in the steel beam in the basement, which can cause squeaky floors.
Gerald Ater, president of AKM, testified that Mrs. Byers asked him to inspect her home once it was built. He found the same deficiencies as Satyapriya did. Upon the request of Mrs. Byers, AKM attempted to remedy these deficiencies. Ater testified that the walls on the second floor of the home were cracked before AKM started working. He explained in detail the repair work AKM performed on the home.
Richard Johnson, Jr., a registered professional engineer and surveyor, testified that he inspected the home. He testified that the work AKM did was not structurally necessary. In his opinion, the roof framing done by Coppel was adequate and was not failing. He also testified that the substitution of gusset plate for a ridge board in the rafters is an acceptable substitution. He then testified that the substitution of two by twelve boards for TJI Joists is an acceptable substitution. He asserted that the venting system Coppell installed has equal venting capacity to the system called for in the plans.
Through extensive testimony, Johnson outlined his disagreements with Satyapriya's report, analysis and testimony. Johnson explained that the Satyapriya's report, which criticized the structural integrity of the home, applied the wrong building code. Johnson testified that there were several causes of the failure of one of the support points at issue. He explained that AKM could have bent an existing support post while adding support posts. In Johnson's opinion, the structure in place before AKM's work was sufficient to carry the load of the home. He also testified that the beams installed by Coppel were able to carry the load of the home and that AKM's work was not necessary. Mr. Johnson then opined that the attic, as constructed by Coppel, was structurally capable of carrying the loads upon it.
Mike Putnam, a real estate broker and appraiser, testified that he inspected the home and appraised it and the lot at two hundred fifteen thousand dollars. He explained that he was aware of the Satyapriya's report, which criticized the construction of the home. He further explained that the house is in a very desirable area because it sits adjacent to a country club golf course.
Coppel's wife, Michelle Coppel, testified that Coppel met with Mrs. Byers two times before the contract was signed. She explained that she and her husband lived across the street from the house Coppel built for the Byers. Michelle Coppel testified that Mrs. Byers was at the house off and on during the building process and often had her set of plans with her checking over the house. She explained that Mrs. Byers walked through the whole house with the Coppels and asked them questions. She testified that she and Mrs. Byers went into the basement before the basement concrete floor was poured, and Mrs. Byers had an opportunity to observe the structure in the basement. When the Coppels moved from their house, Mrs. Byers put a sign in her parent's yard that read, "Thank God Richard Coppel is moving".
In his testimony, Coppel conceded that he did not build the house with the materials for which the plans called. Coppel testified that he had a meeting with Mrs. Byers at a McDonalds where they discussed changing specifications of the house before the parties signed the contract to build the home. At this meeting, Coppel suggested using less expensive materials to replace the microlam, TJI joists, trusses and steel beams. Mrs. Byers did not object.
After he finished the house, Coppel first became aware of Mrs. Byers' complaints through a report written by Mr. Amundsen.[2] The report criticized only the posts in the basement. Coppel testified that he had replaced two of the three posts when Mrs. Byers' mother asked him to leave the property. Coppel agreed that he left a header out of the basement.
Coppel explained that the parties had not documented every change to the specifications and plans. However, Coppel conceded that Mrs. Byers came to him several times during construction with written lists of changes she wanted and questions she wanted him to answer. He testified that he did not intend to deceive the Byers about substitutions for the microlam, TJI joists, trusses, and steel beams. Coppel also testified that the floor of the home squeaked more after AKM had done its work on the home and that AKM caused many of the problems with the home. Coppel also read from a letter he sent to Mrs. Byers' attorney where he stated that Mrs. Byers agreed to the substitutions he made for the microlam, TJI joists, trusses and steel beams.
Once Coppel presented his case, the trial court verbally directed a verdict in favor of Coppel on the Byers' OCSPA claim on the basis that OCSPA did not apply to the construction of a new home.
The trial court instructed the jury to complete interrogatories before reaching a verdict. The first interrogatory asked the jury, "Do you find by a preponderance of the evidence that [Coppel] breached his contract with [the Byers]." The jury answered "no." The second interrogatory asked the jury, "Do you find by a preponderance of the evidence that [Coppel] substituted materials other than those provided for in the parties' agreement during his construction of [the home] thereby causing [the Byers] damage." The jury answered "no." Therefore, the jury returned a verdict in favor of Coppel on the Byers' breach of contract claim and a verdict in favor of Coppel on his counter-claim. The jury awarded Coppel six thousand three hundred fifty-five dollars and six cents in damages.
We dismissed the Byers' initial appeal because the trial court had failed to journalize its decision to grant a directed verdict on the Byers' OCSPA claim. Byers v. Coppel (Nov. 29, 1999), Ross App. No. 99CA2488, unreported.
On remand, the trial court issued an agreed amended judgment entry, granting Coppel's motion for a directed verdict on the Byers' OCSPA claim.
The Byers again appeal and assert the following assignments of error:
 I. The Jury Verdict and the Interrogatory Answers that indicated that the Defendant did not breach the contract and that the Defendant did not substitute materials other than those provided for in the parties agreement during his construction of the residence are against the manifest weight of the evidence.
 II. The Jury Verdict and the Jury's answers to interrogatories are contrary to law.
 III. The trial court erred in holding that the transaction underlying this lawsuit was not subject to the [OCSPA].
 IV. The trial court erred in failing to charge the Jury that the transaction was subject to the [OCSPA].
 II.
In their first and second assignments of error, the Byers argue that the jury's verdict and answers to the interrogatories are against the manifest weight of the evidence and contrary to law. The Byers find fault in the jury's answer of "no" to the following interrogatory:
 "Do you find by a preponderance of the evidence that [Coppel] substituted materials other than those provided for in the parties' agreement during his construction of [the home] thereby causing [the Byers] damage."
They claim that they presented uncontradicted evidence that Coppel substituted materials other than those shown in the plans and did not build the house in accordance with the plan. However, such a showing ignores the possibility that the jury chose to believe Coppel's testimony that the parties agreed to change the microlam, TJI joists, trusses, and steel beams and thus concluded that the "agreement" included such changes. In addition, to answer the interrogatory in the affirmative, the jury had to further conclude that any changes caused the Byers' damages. Thus, even if there was uncontradicted evidence that Coppel improperly substituted other materials for the microlam, TJI joists, trusses, and steel beams, the jury could still have answered the interrogatory in the negative for another reason.
The Byers next allege that the jury's verdict is against the manifest weight of the evidence. A reviewing court will not reverse a judgment as being against the manifest weight of the evidence when the judgment is supported by some competent, credible evidence going to all the essential elements of the case. C.E. Morris Co. v. Foley Constr. Co. (1978),54 Ohio St.2d 279, syllabus. When conducting its review, an appellate court must make every reasonable presumption in favor of the jury's findings of fact. Myers v. Garson (1993), 66 Ohio St.3d 610, 614; SeasonsCoal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. Seasons Coal at 80.
The Byers first argue that there is no evidence to support Coppel's assertion that the parties verbally agreed to substitute cheaper materials for the microlam, TJI joists, trusses, and steel beams. The Byers focus this argument on attacking the theory that the written agreement of the parties was modified by verbal agreements. However, Coppel testified that the parties verbally agreed to changes before executing the written agreement. Because the written agreement contains no integration clause,[3] the contract between the parties may consist of both the verbal and written agreements. Thus, the jury could have believed Coppel's testimony that the parties agreed to the substitutions for the microlam, TJI joists, trusses, and steel beams.
The Byers argue that the parol evidence rule excludes the consideration of any testimony that the parties' verbally agreed to substitute the microlam, TJI joists, trusses and steel beams because Coppel alleges that those statements were made before the execution of the written agreement. The Byers did not object to the testimony that they now complain should have been excluded under the parol evidence rule. The failure to promptly object and call any error to the attention of the trial court, at a time when it could have been prevented or corrected, amounts to a waiver of such error. State v. Lott (1990), 51 Ohio St.3d 160,174, citing State v. Gordon (1971), 28 Ohio St.2d 45, at paragraph two of the syllabus. Thus, they have waived any error.
Assuming arguendo that the Byers did not waive their argument, we still would not be persuaded. The parol evidence rule applies only to integrated writings. Galmish v. Cicchini (2000), 90 Ohio St.3d 22, 28. Because the written agreement at issue contains no integration clause, the parol evidence rule does not apply.
There is some competent credible evidence that Coppel did not breach the parties' contract. Coppel testified that the parties' agreed to substitute cheaper materials for the microlam, TJI joists, trusses, and steel beams. Mrs. Coppel testified that Jill Byers inspected the basement and the remainder of the house before its completion. The testimony indicates that Mrs. Byers spoke up about other problems with the house. Mr. Amundsen's report indicated that the only structural problem with the house was the missing posts, which Coppel was in the process of installing when Jill Byers instructed her mother to order him off the property. Johnson testified that Coppel's substitutions were acceptable from an engineering perspective, the home is structurally sound, and AKM's work was not structurally necessary. Thus, there was some competent, credible evidence that Coppel built the home in compliance with the parties' contract (consisting of both verbal and written agreements) and that the home was structurally sound as built by Coppel. Thus, some competent, credible evidence supports the jury's verdict. Accordingly, the jury's verdict is not against the manifest weight of the evidence. Accordingly, we overrule the Byers' first and second assignments of error.
 III.
In their third and fourth assignments of error, the Byers argue that the trial court erred in directing a verdict in favor of Coppel on their OCSPA claim.
Civ.R. 50(A)(4) provides:
 When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue.
This rule requires the trial court to give the non-moving party the benefit of all reasonable inferences that may be drawn from the evidence. Keeton v. Telemedia Co. of Southern Ohio (1994),98 Ohio App.3d 405, 408 citing Broz v. Winland (1994), 68 Ohio St.3d 521,526. When determining a motion for a directed verdict, the trial court must submit an essential issue to the jury if there is sufficient credible evidence to permit reasonable minds to reach different conclusions on that issue. O'Day v. Webb (1972), 29 Ohio St.2d 215, paragraph four of the syllabus. See, also, Strother v. Hutchinson (1981),67 Ohio St.2d 282, 284-285.
Although a motion for directed verdict requires a trial court to review and consider the evidence, the motion does not present a question of fact or raise factual issues. Ruta v. Breckenridge-Remy Co. (1982),69 Ohio St.2d 66, paragraph one of the syllabus. A motion for a directedverdict tests the legal sufficiency of the evidence rather than its weight or the credibility of the witnesses. Id. at 68-69. A motion for adirected verdict therefore presents a question of law, and an appellate court conducts a de novo review of the lower court's judgment. Howell v.Dayton Power Light Co. (1995), 102 Ohio App.3d 6, 13; Keeton,98 Ohio App.3d at 409.
The OCSPA[4] prohibits suppliers from committing unfair, deceptive or unconscionable acts or practices in consumer transactions. R.C. 1345.02; R.C. 1345.03. A consumer transaction includes a "service." R.C. 1345.01(A). A "service" includes "the construction of a single-family dwelling unit by a supplier on the real property of a consumer." Ohio Adm. Code 109:4-4-01
(adopted pursuant to R.C. 1345.05 to define practices which violate R.C.1345.02 or R.C. 1345.03). Thus, the OCSPA applies to transactions that include a contract to construct a residence. Keiber v. Spicer Const. Co. (1993), 85 Ohio App.3d 391, 392; Fesman v. Berger (Dec. 6, 1995), Hamilton App. No. C-940400, unreported.
Coppel argues that the court in Rose v. Zaring Homes, Inc. (1997),702 N.E.2d 952 found that the OCSPA does not apply to construction of a new home. In Rose, the Rose family sued the builder-developer who sold them the real estate and constructed their home. The Roses' claim concerned the real property that the developer sold them; it did not concern the construction of the home. The Roses sued the builder-developer and made several claims, among them an OCSPA claim. The First District Court of Appeals held that the trial court erred in applying the OCSPA to the Roses' claim because the claim concerned only the real estate portion of the Roses' dealings with the builder-developer and the OCSPA does not apply to real estate transactions. Rose at 745- 747, relying on Shore W. Constr. Co. v. Stroka (1991), 61 Ohio St.3d 45,48. Furthermore, the Rose court expressly stated that it previously accepted the Keiber interpretation of the OCSPA, which found that the OCSPA applies to a contract to build a new home. Rose at 747, citingFesman v. Berger (Dec 6, 1995), Hamilton App. No. C-940400, unreported.
Accordingly, we find that the trial court erred in granting a directed verdict on the Byers' OCSPA claim.
 IV.
In sum, we overrule the Byers' first and second assignments of error and sustain the third and fourth assignments of error, and affirm the judgment in part and reverse the judgment in part and remand this case. We affirm the trial court's judgment upon Coppel's counter-claim and the Byers' breach of contract claim. We reverse the trial court's directed verdict upon the Byers' OCSPA claim. See Charles R. Combs Trucking Co.v. International Harvester Co. (1984), 12 Ohio St.3d 241. We remand this case for proceedings only on the Byers' OCSPA claim.
JUDGMENT AFFIRMED IN PART AND REVERSED IN PART AND REMANDED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART AND REVERSED IN PART and the cause remanded to the trial court for further proceedings consistent with this opinion and that costs herein be taxed equally between the parties.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Ross County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, P.J. and Evans, J.: Concur in Judgment and Opinion.
[1] According to Gerald Ater of AKM Construction, who served as an expert witness for the Byers at trial, TJI is a brand name joist.
[2] Mr. Amundsen did not testify at the trial.
[3] An integration clause indicates that the parties intend a writing to be the final and complete expression of their agreement. See Pettettv. Cooper (1939), 62 Ohio App. 377.
[4] A person asserting violations of the OCSPA has the right to a jury trial of their claim. Robinson v. McDougal (1988), 62 Ohio App.3d 253.