OPINION
{¶ 1} Plaintiffs-appellants, James and Cynthia Ruschau, appeal the Warren County Court of Common Pleas grant of summary judgment in favor of defendant-appellee, Monogram Properties. We affirm the decision of the trial court.
 {¶ 2} In December 1996, appellee sold land to Oberer Development Company. The sales contract included a "Dirt Clause." The Dirt Clause states in pertinent part the following:
 {¶ 3} "If Purchaser, in the process of excavating for a house on any of the aforesaid developed lots, discovers earth fill or natural organic material that, in Buyer's opinion, will not provide adequate bearing capacity for a single family house, the following procedures shall be followed:
 {¶ 4} "(a) After completing the excavation and prior to installing piers for the foundation of the house, Purchaser shall notify Seller that, in Purchaser's opinion, a bearing capacity problem exists on said developed lot.
 {¶ 5} "(b) Upon the aforementioned notification, Seller shall inspect the excavation and, if Seller agrees that piers are necessary, Purchaser shall continue construction and Seller shall reimburse Purchaser for the cost of installing piers on the developed lot in question.
 {¶ 6} "(c) If Seller inspects the excavation and does not agree that piers are necessary on said developed lot, a qualified geotechnical engineer shall be selected to decide if, in fact, piers are necessary to provide proper support for a single family house. If in the geotechnical engineer's opinion, piers are necessary, Seller shall reimburse the Purchaser for the cost of installing piers on said developed lot or purchase the lot back at the sales price."
 {¶ 7} In November 2001, appellants bought the subject parcel of land from Oberer. The purchase agreement contained a provision in which Oberer assigned the Dirt Clause rights to appellants. The purchase agreement stated that appellants, having been assigned Oberer's Dirt Clause rights, were to remedy all issues concerning fill or natural organic material with appellee.
 {¶ 8} In May 2002, appellants believed there was a problem with the soil bearing capacity. Appellants notified appellee and obtained a geotechnical inspection of the land performed by Thelen and Associates. The report stated that the existing fill was unsuitable for direct support of conventional foundations and included the following analysis:
 {¶ 9} "This writer recommended that the Contractor either support the residence on series of drilled piers and grade beams or provide a continuously trenched subfooting to support the residence as designed. Typically, a continuously trenched subfooting whose depths do not average deeper than 7 feet can be installed at less expense than drilled piers and grade beams due to the decreased time in which they can be designed and installed. * * * Based on the soft site conditions and the aforementioned information, it was our recommendation that a continuously trenched subfooting be installed."
 {¶ 10} Appellants insisted that appellee should be responsible for the appropriate remedy, but appellee maintained that appellants should seek relief from Oberer. Appellants, not wanting to delay construction any further, followed the geotechnical engineer's recommendation and opted to use the trenched subfooting to support the residence.
 {¶ 11} In August 2003, appellants brought suit alleging breach of contract, breach of warranty, and violations of the Ohio Consumer Sales Practices Act ("CSPA"). They sought recovery of damages totaling over $28,000. Appellee moved for summary judgment, and the trial granted the motion. Appellants appeal this decision raising three assignments of error.
 {¶ 12} Assignment of Error No. 1:
 {¶ 13} "THE TRIAL COURT ERRED IN FINDING THAT NO GENUINE ISSUE OF MATERIAL FACT EXISTED AS THE DEFENDANT BREACHED THE CONTRACT AND ISSUES OF AMBIGUITY EXIST IN THE LANGUAGE OF THE CONTRACT."
 {¶ 14} Appellants argue that the summary judgment was improper, alleging the geotechnical engineer's report indicated that piering was necessary. Appellants also claim that the subfooting option they pursued constitutes piering under a broad definition.
 {¶ 15} Civ.R. 56(C) provides in part that summary judgment shall be rendered where 1) there is no genuine issue as to any material fact; 2) the moving party is entitled to judgment as a matter of law; 3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the party against whom the motion is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66. An appellate court's standard of review on appeal from a summary judgment is de novo. Burgess v. Tackas (1998), 125 Ohio App.3d 294, 296. An appellate court reviews a trial court's disposition of a summary judgment independently and without deference to the trial court's judgment. Id. In reviewing a summary judgment disposition, an appellate court applies the same standard as that applied by the trial court. Midwest Ford, Inc. v. C.T. Taylor Co. (1997),118 Ohio App.3d 798, 800.
 {¶ 16} In this case, the trial court found that there was no breach in the contract. The court pointed specifically to the terms of Subsection C of the Dirt Clause that "Seller shall reimburse Purchaser for the cost of installing piers * * *." (Emphasis in original.) Because no piers were installed, the court found that appellee was under no obligation to pay for appellants' decision to pursue the subfooting option.
 {¶ 17} We find the grant of summary judgment in favor of appellee is proper albeit for a different reason than that cited by the trial court. Specifically, the contract in clear and unambiguous language states appellee shall reimburse the cost of pier installation only "[i]f in the geotechnical engineer's opinion, piers are necessary." Webster's Third New International Dictionary defines "necessary" as "that cannot be done without; that must be done or had; absolutely required; essential, indispensable." Webster's Third New International Dictionary (1993) 1511. The engineer's report did not state that piers were necessary. He recommended that the residence be supported "on series of drilled piers and grade beams or a continuously trenched subfooting to support the residence as designed." Because the use of piers was not essential or absolutely required, appellee was under no obligation to pay for pier installation under the contract terms.
 {¶ 18} Appellants' argument that the subfooting option constitutes the use of piers under the Construction Dictionary is unpersuasive. The geotechnical engineer's report presented two distinguishable options of either installing piers or using a subfooting trench system. We find no evidence that supports appellants' contention that the trench system fits within a broad definition of piers.
 {¶ 19} The trial court did not err when it granted summary judgment. It reached the right result for a slightly different reason. See Perry v. Gen. Motors Corp. (1996),113 Ohio App.3d 318, 324-25. We find that reasonable minds could only come to the conclusion that there was no breach of contract because the use of piers was not necessary. Appellee was entitled to judgment as a matter of law. The first assignment of error is overruled.
 {¶ 20} Assignment of Error No. 2:
 {¶ 21} "THE TRIAL COURT ERRED IN NOT FINDING THAT THE `DIRT CLAUSE' WARRANTED SOIL OF SUFFICIENT CAPACITY TO CONSTRUCT A RESIDENTIAL BUILDING."
 {¶ 22} Appellants argue that the trial court erred when it found Chapter 1302 of the Revised Code was inapplicable to the case. Appellants claim that appellee breached a warranty on the soil, alleging that appellee was under an obligation to make the soil suitable for construction.
 {¶ 23} The trial court cited the definition section of R.C. Chapter 1302 and stated that real estate is not a "good," and thus not covered by any Uniform Commercial Code ("UCC") warranty. R.C. 1302.01(A)(8) states the following:
 {¶ 24} "`Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities, and things in action."
 {¶ 25} R.C. 1302.02 limits the scope of Ohio's UCC provisions to transactions in goods. Section 1302.01 to 1302.98 are inapplicable to realty. Appellants' claim that appellee breached an implied warranty of merchantability rests on the erroneous premise that real estate constitutes a good and therefore appellee is a merchant of such good. The trial court did not err when it found appellee was entitled to judgment as a matter of law with respect to this warranty argument. The second assignment of error is overruled.
 {¶ 26} Assignment of Error No. 3:
 {¶ 27} "THE TRIAL COURT ERRED IN NOT APPLYING THE OHIO CONSUMER SALES PRACTIVE ACT AGAINST THE DEFENDANT BASED UPON THE FACTS OF THE CASE."
 {¶ 28} Appellants argue that the trial court erred when it found the CSPA inapplicable to the dispute. Appellants maintain that appellee's alleged failure to honor an implied warranty of merchantability was a deceptive practice in violation of R.C.1345.02(B)(10).
 {¶ 29} The trial court granted appellee's summary judgment motion with respect to the inapplicability of CSPA, finding that the law is inapplicable to pure real estate transactions. The CSPA defines "consumer transaction" as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." R.C. 1345.01(A). The Ohio Supreme Court held that this definition evidences the General Assembly's desire to exclude real estate from the scope of the act. See Shore W. Constr. Co. v. Skora (1991),61 Ohio St.3d 45, 48.
 {¶ 30} Appellants' reliance on Keiber v. Spicer (1993),85 Ohio App.3d 391, is misplaced. In that case, the Second District Court of Appeals found the CSPA was applicable to a transaction that included a contract to construct a residence. The transaction between appellee and appellants in this case, however, was a pure real estate transaction; there was no transfer or assignment of a good or service. Thus the trial court did not err when it found the CSPA inapplicable. Appellants' third assignment of error is overruled.
 {¶ 31} Judgment affirmed.
Young and Bressler, JJ., concur.