Rebecca L. STALEY, Plaintiff,

v.

AMERICORP CREDIT CORP.,
et al., Defendants.

No. CIV. JFM–01–1968.

United States District Court,
D. Maryland.

Sept. 25, 2001.

---

Douglas B. Bowman, Legg Law Firm LLC, Frederick, MD, Scott C. Borison, Legg Law Firm, LLC, Frederick, MD, for Plaintiff.

Mitchel H. Kider, Leah, Schmulewitz & Getlan, David M. Souders, Weiner, Brodsky, Sidman & Kider, PC, Washington, DC, Gerald Danoff, Danoff, King & Hofmeister, P.A., Towson, MD, for Defendant.

## *MEMORANDUM*

MOTZ, District Judge.

Plaintiff Rebecca L. Staley has brought this suit under the Maryland Mortgage Lender Law ("MMLL"), Md.Code Ann., Fin. Inst. § 11–501 *et seq.*, and the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, against Americorp Credit Corporation ("Americorp") and Household Finance Corporation ("Household"). Pursuant to Fed.R.Civ.P. 12(b)(6), Americorp has moved to dismiss for failure to state a claim. The motion will be granted in part and denied in part.

### I.

Plaintiff owns real property at 142 Crosstimber Way in Frederick, Maryland. This property has been her principal residence at all times relevant to this action. On or about August 3, 2000, Plaintiff executed and delivered to Americorp a note and deed of trust that constituted a second mortgage on her principal residence. Plaintiff alleges that, in violation of § 11–505 of the MMLL, the documents relating to her second mortgage were executed at a location other than Americorp's office, a title company or an attorney's office, and that Americorp did not hold a license to act as a mortgage lender at the location where the plaintiff executed the documents. Americorp argues that the MMLL does not provide a private right of action for such a violation.

Plaintiff also alleges that, in violation of the TILA, Americorp's disclosures to her regarding finance charges and annual percentage rate were inaccurate. She further claims that she did not receive notice of her right to rescind and that the notice that she did receive provided the incorrect date that the rescission period would expire.[1] Finally, Plaintiff alleges that she gave defendants written notice of her rescission and that defendants did not honor it. Americorp argues that Plaintiff's complaint fails to allege facts to support her TILA claims, that she received all required notices and disclosures and that the notice of the right to rescind was properly dated August 7, 2000.

### II.

The MMLL does not explicitly provide Plaintiff with a private right of action to redress Americorp's alleged violation of § 11–505 of the MMLL. Unless the MMLL implies such a private right of

---

1. These two contentions could be read as contradicting each other. However, as I explain later, I will read them to state that Plaintiff did not receive *all* of the notices to which she was entitled and that the notice that she did receive was incorrect in its rescission date.

action, Plaintiff has no viable claim under that section.

The Maryland Court of Appeals has adopted the multi-factor test set out by the Supreme Court in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), to determine whether a statute implies a private right of action. *Erie Ins. Co. v. Chops*, 322 Md. 79, 585 A.2d 232, 237 (Md. 1991). The three relevant factors to be considered are

> First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted' ...? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?

422 U.S. at 78, 95 S.Ct. 2080 (citations omitted).

### A.

"In determining whether a private right of action is to be implied, the Maryland Court of Appeals has distinguished between those statutes designed to confer a general benefit on the public at large and those designed to protect a particular subgroup of the public or to preserve or create individual rights." *IVTX. Inc. v. United Healthcare of the Mid–Atlantic, Inc.*, 112 F.Supp.2d 445, 447 (D.Md.2000). A private right of action will not be implied from a statute that was designed to confer only a general benefit on the public at large. *See Sugarloaf Citizens Ass'n, Inc. v. Gudis*, 78 Md.App. 550, 554 A.2d 434, 438 (Md.Ct.Spec.App.1989) *aff'd on other grounds*, 319 Md. 558, 573 A.2d 1325 (1990) (holding that county ethics law did not create private right of action in part because it was "enacted for the purpose of protecting society as a whole"); *Widgeon v. Eastern Shore Hosp. Ctr.*, 300 Md. 520,

479 A.2d 921, 929 (1984) (explaining that it would be inappropriate to sanction a direct private action under local safety ordinances because they were designed only to confer a general benefit on the public at large).

In contrast to the public safety ordinances and ethics laws that Maryland courts have found do not imply private rights of action, the MMLL is "designed to protect [a] sub-group of the public." *Sugarloaf*, 554 A.2d at 438. The law was intended to create a "streamlined licensing scheme for all persons who make or broker loans secured by residential real estate." State of Maryland, House of Delegates, Economic Matters Comm., Bill Analysis, H.B. 1604, 1989 Session, at 3. This comprehensive licensing scheme is meant to protect borrowers. § 11–501(b) of the MMLL defines a borrower as "a person who makes a loan application for or receives a loan or other extension of credit that is or is intended to be secured in whole or in part by any interest in residential real property located in Maryland." Plaintiff fits within this definition, which indicates that she is "one of the class for whose especial benefit the statute was enacted." *Cort*, 422 U.S. at 78, 95 S.Ct. 2080.

### B.

The available legislative record is silent on the issue of a legislative intent to provide or deny a private right of action for violations of § 11–505, which ordinarily would weigh strongly against implying one. *Sugarloaf*, 554 A.2d at 437–38 ("Where the legislative history does not indicate any discussion whatsoever as to whether a statute gives rise to such a right, the fact that the ordinance is silent would weigh heavily against an intent ... to create a private cause of action."). However, I am reluctant to give this silence in the record much weight given that

the legislative record of the General Assembly is not extensive. *See IVTX,* 112 F.Supp.2d at 447 (holding that the "sparsity of legislative history accompanying Maryland state legislation" entitles the silence of the legislative history to little weight); *cf. Sugarloaf,* 554 A.2d at 437 (holding that the silence of the legislative record regarding whether a Montgomery County ordinance created a private right of action should be given little weight given the level of record keeping in local government).

While not drawing any inference from the silence of the legislative record, I am nevertheless persuaded that the General Assembly has acted in a manner which reflects that it did not intend to create a private cause of action for violation of § 11–505. In its regulation of mortgage loans, the Maryland General Assembly has created a legislative scheme that separates licensing and credit provisions. Notably, the credit provisions that govern Americorp's loan to Plaintiff explicitly provide a private right of action for their violation, Md.Code Ann., Com. Law II § 12–413, while the licensing provisions generally do not.[2] The General Assembly has drawn a distinction between those provisions that directly injure specific borrowers and those provisions that have a broader, more general impact on all borrowers. In making this distinction, it has decided that violation of the former requires private actions as a remedy while the latter does not. In addition, the fact that the General Assembly revisited the penalty provisions of § 11–523 in 1997, 1998 and 2000 and did not add an explicit private cause of action for violation of § 11–505 supports the inference that the legislature did not intend to provide such a cause of action.[3]

## C.

Finally, I must consider whether it is consistent with the underlying purposes of the legislative scheme to imply a private right of action. The General Assembly created a comprehensive licensing regime to regulate mortgage lenders. Examination of the MMLL as a whole makes clear that this licensing scheme was meant to be carried out through an administrative entity that polices the industry. The General Assembly has "carefully crafted and limited the civil and criminal enforcement provisions" of the MMLL. *Johnson v. United Parcel Services, Inc.,* 722 F.Supp. 1282, 1284 (D.Md.1989) *aff'd on other grounds,* 927 F.2d 596 (4th Cir.1991) (holding that the Maryland antipolygraph statute did not create a new private right of action for damages). § 11–517 gives the Commissioner of Financial Regulation authority to suspend or revoke a license or to issue orders to licensees to cease and desist from illegal actions or to take affirmative actions to correct their illegal actions. These orders are enforceable through civil fines and the Commissioner has the ability to petition the court for assistance in enforcement. In an effort to carry out the regulatory scheme intended by the legislature, the Commissioner has promulgated regulations codified as Md. Regs. Cod. Tit.

---

**2.** While it is true that § 11–523(b) allows an individual to bring suit, this private right of action is limited to suits against creditors that fail to get a license at all, in contrast to licensed lenders that violate the licensing provisions.

**3.** In 1997, the General Assembly also created the Task Force To Examine the Mortgage Lending Business. In its 92 page final report, the Task Force did not discuss the possibility of or need to create a private right of action for violation of the licensing provisions of the MMLL. *See* State of Maryland, Task Force to Examine the Mortgage Lending Business, Final Report to the General Assembly (December 19, 1997).

9 § 03.06.01 *et. seq.* which elaborate on the MMLL.

To allow individual borrowers to enforce the licensing provisions of the MMLL would be inconsistent with the administrative scheme that the General Assembly established to enforce the MMLL. Not only would it be an inefficient use of resources, but it would also create the possibility of conflicting rules, interpretations and practices that would ultimately hinder the enforcement of the MMLL. For these reasons, it would be inconsistent with the purposes of the legislative scheme of the General Assembly to imply a private right of action for violations of § 11–505. *See generally Flynn v. Everything Yogurt,* 1993 WL 454355, at *6–7 (D.Md.1993) (holding that there was no implied private right of action in the Maryland Franchise Disclosure Law because it would be inconsistent with a legislative scheme that left enforcement to the Commissioner and Attorney General except in the limited cases where a private cause of action is explicitly created).

In sum, particularly given that the Maryland Court of Appeals has "been reluctant to find an implied grant of a private cause of action," *Magan v. Med. Mutual Liab. Ins. Soc'y of Md.,* 331 Md. 535, 629 A.2d 626, 631 n. 4 (1993), I do not find that the MMLL grants Plaintiff a private right of action for Americorp's alleged violation of § 11–505. Americorp's motion to dismiss as to Count I will be granted.

### III.

■ Americorp argues that in Count II of her complaint, Plaintiff has failed to allege sufficient facts to support her claims. However, "neither vagueness nor lack of detail is sufficient ground on which to grant a motion to dismiss." *Buchanan v. Consol. Stores Corp.,* 125 F.Supp.2d 730, 734 (D.Md.2001) (*citing Hill v. Shell Oil Co.,* 78 F.Supp.2d 764, 775 (N.D.Ill. 1999)). Only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief," *Buchanan,* 125 F.Supp.2d at 734 (*quoting Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)), should Americorp's motion to dismiss be granted.

The loan to Plaintiff from Americorp was a consumer credit transaction governed by the TILA and its implementing regulation, Regulation Z, 12 C.F.R. § 226.1 *et seq.* In Count II of her complaint, Plaintiff states four separate claims upon which relief could be granted. For this reason, Americorp's motion to dismiss will be denied as to Count II.

### A.

The TILA requires a creditor to disclose to a borrower "certain material terms clearly and conspicuously in writing, in a form that [Plaintiff] may examine and retain for reference." *In re Ralls,* 230 B.R. 508, 515 (Bankr.E.D.Pa.1999); 15 U.S.C. § 1638(b)(1); 12 C.F.R. § 226.17(a)(1). The material terms that must be disclosed include the finance charge and the annual percentage rate. 15 U.S.C. §§ 1602(u), 1638(a); 12 C.F.R. §§ 226.18(d), (e). Most importantly, the disclosures must reflect the actual terms of the legal obligation between the parties. 12 C.F.R. § 226.17(c)(1).

■ In her complaint, Plaintiff states that she was "entitled to a disclosure of the annual percentage rate and finance charges," Compl. ¶ 14, and that "the disclosures provided to the plaintiffs [sic] were inaccurate," Compl. ¶ 15. It does not matter that Plaintiff has not specified the specific statute or regulations that entitle her to relief. *Graves v. Tru–Link Fence Co.,* 905 F.Supp. 515, 521 (N.D.Ill.1995)

("It is a well-settled principle of law that a complaint should not be dismissed merely because a plaintiff's allegations do not support the particular legal theory [she] advances, for the court is under a duty to examine the complaint for relief on any possible theory.") (*quoting Moore v. Fid. Fin. Servs., Inc.,* 869 F.Supp. 557, 561 (N.D.Ill.1994)). The allegation that the disclosure that she received was inaccurate is sufficient to state a claim upon which relief could be granted. *See In re Ralls,* 230 B.R. at 517 ("Once a violation is found, liability is imposed regardless of whether the disclosure statement is over- or under-inclusive and whether the creditors' conduct was actually damaging, intentional, negligent, or none of the above.")

### B.

■ When a borrower uses her principal dwelling to secure her loan, the TILA provides her with a right of recission. 15 U.S.C. § 1635(a). The creditor is required to "deliver two copies of the notice of the right to rescind" to the borrower. 12 C.F.R. § 226.23(b)(1). Plaintiff has alleged that she did not receive the notices that Americorp was required by 12 C.F.R. § 226.23(b) to give her. Compl. ¶ 19. Given that the next paragraph of Plaintiff's complaint states that she received a notice of her right to rescind, I presume that Plaintiff is alleging that she received only one copy of the notice rather than the two copies that the regulations require. *See Reese v. Hammer Fin. Corp.,* 1999 WL 1101677, at *2 (N.D.Ill.1999) ("On a motion to dismiss the Court draws all inferences

and resolves all ambiguities in the plaintiff's favor . . . ."). This allegation is sufficient to state a claim which would entitle Plaintiff to relief.

### C.

■ Under the TILA, the notice of right to rescind that a creditor gives a borrower must clearly and conspicuously disclose "the date the rescission period expires." 12 C.F.R § 226.23(b)(1)(v). The rescission period expires at "midnight of the third business day following consummation [of the loan], delivery of the notice [of the right to rescind], or delivery of all material disclosures, whichever occurs last." 12 C.F.R. § 226.23(a)(3). Plaintiff alleges that "the notice provided a rescission date before the documents were ever executed." Compl. ¶ 20. If the notice of the right to rescind stated that the rescission period expired on a date prior to the consummation of the loan, the notice would have failed to provide a clear and conspicuous disclosure of the date that the period of rescission actually expired, thus violating the TILA.[4] For this reason, Plaintiff has stated a claim for which relief could be granted.

### D.

Under the TILA, a borrower exercises her right to rescind by notifying the "creditor of the rescission by mail, telegram or other means of written communication." 12 C.F.R. § 226.23(a)(2). When a valid rescission is made by the consumer, "the security interest giving rise to the right of rescission becomes void and the consumer

---

4. Americorp urges me to consider the notice of right to rescind that it has attached to its motion to dismiss to prove that the notice it provided to Plaintiff was sufficient. However, I do not feel that it is appropriate to consider this notice in evaluating whether Plaintiff has alleged sufficient facts to state a claim. *See Reese,* 1999 WL 1101677, at *3 (refusing to consider notice of right to rescind attached to motion to dismiss because it does not meet the "narrow exception of documents considered part of the pleadings" but "merely raises questions regarding the factual circumstances . . . which would be inappropriate . . . to pursue in [a] motion to dismiss").

**584**

shall not be liable for any amount, including any finance charges." 12 C.F.R. § 226.23(d)(1). In addition, "within 20 calender days after the receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest." 12 C.F.R. § 226.23(d)(2).

■ Plaintiff has alleged that she gave "defendants written notice of her rescission," Compl. ¶ 22, and "defendants did not honor the Plaintiff's notice of rescission," Compl. ¶ 23. The failure to honor a consumer's rescission of her loan is a separate violation of the TILA. *Michel v. Beneficial Consumer Disc. Co.*, 140 B.R. 92, 100 (Bankr.E.D.Pa.1992) ("It is also well-established that the refusal to honor the valid rescission is a violation [of the TILA] separate from the violation which justified the rescission, thus justifying a separate statutory penalty if suit is initiated within one year from the rescission."). Plaintiff's allegation that Americorp failed to honor her rescission of her loan is sufficient to state a claim upon which relief could be granted. A separate order effecting the rulings made in this memorandum is being entered herewith.

### ORDER

For the reasons stated in the accompanying memorandum, it is, this 25th day of September 2001 ORDERED:

1. That Defendant's Motion to Dismiss for Failure to State a Claim is granted in part and denied in part;

2. Plaintiff's Count I is dismissed; and

3. Count II is *not* dismissed.