Martin L. HANLIN, et al., Plaintiffs,

v.

**OHIO BUILDERS AND
REMODELERS, INC.,
et al., Defendants.**

No. 2:00–CV–179.

United States District Court,
S.D. Ohio,
Eastern Division.

May 29, 2002.

Robert C. Johns, Southeastern Ohio Legal Services, Steubenville, OH, Gary Michael Smith, Graham McClelland Ransbottom, Dover, OH, for plaintiffs.

David A. Wallace, Zeiger, Dreher & Carpenter, Columbus, OH, for EquiCredit Corp. of PA, defendant.

David K. Stein, Stein Chapin & Associates LLC, Columbus, OH, for BR Financial, defendant.

Thomas Robert McGrath, McGrath & Breitfeller, Columbus, OH, for Express Financial Service, defendant.

## OPINION AND ORDER

SARGUS, District Judge.

This matter is before the Court for consideration of Plaintiffs' Motions for Partial Summary Judgment against Defendant Ohio Builders and Remodelers, Inc. (Doc. # 72) and against Defendant Equicredit (Doc. # 85); as well as Defendant Equicredit's Motion for Summary Judgment (Doc. # 78). For the reasons that follow, Plaintiffs' motion against Defendant OBR is granted by virtue of OBR's default; Plaintiff's motion against Defendant Equicredit is denied in part; and Defendant Equicredit's motion is granted in part and denied in part.

## I.

Plaintiffs Martin and Shirley Hanlin ["Plaintiffs"] bring this action challenging the terms and conditions of credit extended to them in connection with home repair work. The Defendants in this action are: Ohio Builders and Remodelers, Inc. ["OBR"], which performed the repair work; Equicredit Corporation, Plaintiffs' mortgage lender; and Express Title, Plaintiffs' title agent. Plaintiffs' claims are pursuant to the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* and the Ohio Consumer Sales Practices Act, R.C. Chapter 1345. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

The Plaintiffs, who are of limited financial means and have little education, reside at 416 Darlington Road in Steubenville, Ohio. In February 1999, Plaintiffs responded to a newspaper advertisement of Defendant OBR. A representative came to Plaintiffs' home and Plaintiffs explained that they could only afford to pay $150 per month for the various anticipated home repair work. (*Deposition of Martin Hanlin* at 24–26). Plaintiffs signed a contract with OBR for repair work totaling $17,000; Plaintiffs were to pay $150 per month for 360 months at an annual percentage rate of 9.75%. (Exhibit 1 attached to *Plaintiffs' Motion*).

Defendant OBR contacted BR Financial, a mortgage broker, to arrange financing for the work to be performed. BR Financial, in turn, contacted mortgage lender Defendant Equicredit. The credit obtained was on different terms than those indicated on Plaintiffs' contract with OBR. Closing services and title preparation for the loan were performed by Defendant Express Title.

On April 9, 1999, a closing on the mortgage loan was conducted at the Plaintiffs' home by one Candi Cole, an independent title agent who worked with Express Title. Plaintiffs signed a $24,650 loan with an interest rate of 13.65%. (Exhibit 6 attached to *Plaintiffs' Motion*). Plaintiffs' monthly

payments were listed on the loan as $294.48 per month for 360 months. (*Id.*). Plaintiffs claim that they did not comprehend the nature of the documents signed and the Ms. Cole did not explain the documents to them. (*Deposition of Martin Hanlin* at 95; *Deposition of Shirley Hanlin* at 106). Despite the loan documents, Plaintiffs made payments to Equicredit of $150 per month based upon the contract with OBR.

OBR completed the home repair work, but Plaintiffs encountered several problems with the workmanship. In particular, Plaintiffs claim that there were various water leaks in the bathroom as well as problems with the front door and certain windows. (*Shirley Hanlin Depo.* at 104–06). Plaintiffs received threats of foreclosure on their home for the failure to meet the monthly payments outlined in the mortgage agreement.

Plaintiffs filed the instant action on February 17, 2000 seeking recission of the terms of credit extended to them. Plaintiffs and Equicredit have filed cross-motions for summary judgment. Defendant OBR, who has been without counsel since April 19, 2001, has not responded to Plaintiffs' motion.

## II.

The procedure for considering whether summary judgment is appropriate is found in Fed.R.Civ.P. 56(c); this section provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. Kress & Co.,* 398 U.S. 144, 158–

59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also, Matsushita Electronic Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The United States Court of Appeals for the Sixth Circuit has recognized that *Liberty Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1476 (6th Cir.1989). The court in *Street* identifies a number of important principles in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Liberty Lobby,* 477 U.S. at 257, 106 S.Ct. 2505). The nonmoving party must adduce more than a mere scintilla of evidence in order to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to

merely " 'show that there is some metaphysical doubt as to the material facts.' " *Id.* (quoting *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348). Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* That is, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

## III.

### A. Plaintiffs' Claims against Defendant OBR

On December 19, 2001, Plaintiffs filed a motion for summary judgment on their claims against Defendant OBR. The Defendant has failed to respond to the motion as it has been without counsel.

On April 19, 2001, the motion of Yale R. Levy, Esq. and Gregory S. Pope, Esq. of Skrobot, Pope, Levy & Fisher, LLP to withdraw as counsel for Defendant OBR was granted. (Doc. # 46). OBR was ordered to obtain new counsel within thirty days of April 19, 2001. OBR was advised that failure to comply with the directive could result in the entry of default and default judgment. (*Id.*). OBR failed to obtain counsel.

Based upon Defendant OBR's failure to comply with this Court's April 19, 2001 Order, the Court hereby ORDERS the Entry of Default Judgment against Defendant OBR in the amount of $209,408.48. Alternatively, the Court has reviewed the Plaintiffs' *Motion for Summary Judgment* to which OBR has not responded. The Court also finds that Plaintiffs are entitled to summary judgment against OBR in the same amount of $209,408.48.

### B. Plaintiffs' Claims against Defendant Equicredit

Plaintiffs' claims against Defendant Equicredit are for violation of the Ohio Consumer Sales Practices Act ["CSPA"], R.C. §§ 1345.21–1345.28 and the Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* Both parties seek summary judgment on these claims.

### 1. CSPA claim

R.C. § 1345 makes it unlawful for a supplier to engage in an unfair, deceptive or unconscionable act or practice in regard to a consumer transaction. A "supplier" is defined as a "seller, lessor, assignor, franchisor, or other person engaged in the business of affecting or soliciting consumer transactions whether or not he deals directly with the consumer." R.C. § 1345.01(C). A "consumer transaction" is a "sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise or an intangible, to an individual for purposes that are primarily personal, family, household, or solicitation to supply any of these things." R.C. § 1345.01(A). A consumer transaction does not encompass "transactions between persons, defined in sections 4905.03 and 5725.01 of the Revised Code, and their customers...." *Id.*

R.C. § 5725.01 defines a "dealer in intangibles" as

every person who keeps an office or other place of business in this state and engages at such office or other place in the business of lending money, or discounting, buying or selling bills of exchange, drafts, acceptances, notes, mortgages, or other evidences of indebtedness, or of buying or selling bonds, stocks, or other investment securities, whether on the person's own account with a view to profit, or as agent or

broker for others, with a view to profit or personal earnings. . . .

R.C. § 5725.01(B).

In the December 26, 2001 *Opinion and Order,* this Court addressed whether Plaintiffs stated a claim against Equicredit under the CSPA. The Court held open the possibility that Equicredit could be derivatively liable under the CSPA because Plaintiffs allege that Equicredit holds the consumer contract which OBR entered into with Plaintiffs. The Court observed that such liability turns on whether the contract contains an FTC "holder rule" provision, which provision would subject any holder of the contract to all claims and defenses the debtor could assert against the seller of the goods or services, here Defendant OBR. *(Opinion and Order* at 7).

In the December 26, 2001 *Opinion and Order,* this Court also addressed the viability of Plaintiffs' attempt to hold Equicredit directly liable under the CSPA. The Court held that Equicredit could only be held liable under a direct theory if it fell outside the purview of R.C. § 5725.01, *supra.* Plaintiffs alleged that Equrcredit's office was located in the State of Pennsylvania and not in the State of Ohio, thereby exempting it from § 5725.01. The Court could not resolve the matter on the pleadings, and Plaintiffs' claim was allowed to proceed.

Equicredit moves for summary judgment on Plaintiffs' CSPA claims. Equicredit first asserts that the transaction in which the parties were engaged is a pure real estate transaction which is outside the scope of the CSPA. Second, Equicredit asserts that it is exempt from the CSPA because it is a dealer in intangibles under R.C. § 5725.01.

■ With respect to the latter, Plaintiff alleges that Defendant Equicredit of Wexford, Pennsylvania does not keep a place of business in the State of Ohio and thus, is not a dealer in intangibles. Equicredit Corporation of Wexford PA, the Defendant herein, is licensed by the State of Ohio to engage in the business of making loans in accordance with R.C. §§ 1321.51 to 1321.69. (Exhibit 1 to *Declaration of James Dodd* ). Equicredit Corporation of Wexford, Pennsylvania does not, however, maintain an office in this state. Rather, other branch offices of the parent corporation, Equicredit, keep offices in this state. (Exhibit 2, *Id.*). Since the Defendant herein does not keep an office in this state, the Court concludes that it does not satisfy the requirement of § 5725.01, which states that a dealer in intangibles is "every person **who keeps an office or other place of business in this state** and engages at such office or other place in the business of lending money. . . ." R.C. § 5725.01(B) (emphasis added). Thus, to the extent Defendant seeks summary judgment on Plaintiffs' CSPA claim on the basis that it is a dealer in intangibles, the motion is denied.

As a separate matter, Defendant asserts that it cannot be held directly liable under the CSPA because the transaction at issue is a pure real estate transaction. Defendant cites *Brown v. Liberty Clubs, Inc.,* 45 Ohio St.3d 191, 543 N.E.2d 783 (1989) in support of this proposition.

In *Brown,* the plaintiffs purchased individual real estate lots on an installment contract basis after the developer enticed them to visit the development by offering the plaintiffs free sets of steak knives. When the plaintiffs were given lots different from those contracted for, they sued the developer under the CSPA. The Ohio Supreme Court held that because the transaction between the parties involved the transfer of personal property, *i.e.,* the steak knives, and was not purely a real estate transaction, it was within the purview of the CSPA. The court stated that

the CSPA "is applicable to the personal property or services portion of a mixed transaction involving both the transfer of personal property or services, and the transfer of real property." *Id.* at 195, 543 N.E.2d 783. The CSPA does not apply to a pure real estate transaction. *Id.*

In opposition to Defendant's argument that this case is unlike *Brown,* Plaintiffs argue that the transaction is "mixed" because Defendant supplied "closing services" to Plaintiffs in connection with their mortgage. Plaintiffs rely on *Drozeck v. Lawyers Title Ins. Corp.,* 140 Ohio App.3d 816, 749 N.E.2d 775 (2000) in support of this position.

In *Drozeck,* the plaintiff real estate purchaser sued the defendant escrow agent under the CSPA for charging plaintiff a $15 recording fee which amount allegedly exceeded the fee charged by the county recording office. The trial court initially dismissed the claim against the defendant but later amended its decision and stated, without explanation, that the defendant was subject to the CSPA. In considering this ruling, the Ohio Court of Appeals held that it could not determine, at the pleadings stage, whether the defendant was an insurance company for purposes of R.C. § 5725, thereby making it exempt from the CSPA. The court did not address, as Plaintiffs herein suggest, whether the transaction was "mixed" and not purely a real estate transaction.

Following the Ohio Supreme Court's decision in *Brown,* courts in this state have struggled with what constitutes a mixed transaction in the area of real estate for purposes of the CSPA. In *Keiber v. Spicer Constr. Co.,* 85 Ohio App.3d 391, 619 N.E.2d 1105 (1993), the Ohio Court of Appeals considered what "services" are sufficient to bring a transaction outside the realm of pure real estate for purposes of the CSPA. The court held that a contractor building a new house was a supplier of

consumer services and could be held liable under the CSPA. The court found its conclusion consistent with the definition of services in OAC § 109:4–3–01(C)(2), which states:

"Services" means performance of labor for the benefit of another. Services include, but are in no way limited to, the construction of a single-family dwelling unit by a supplier on the real property of a consumer.

■ The services rendered in this case, *i.e.,* closing services, do not fit the foregoing definition as was the case in *Keiber.* This Court concludes that the closing services provided by Defendant Equicredit were part and parcel of the real estate transaction and thus Equicredit cannot be held liable under the CSPA for actions performed in rendering those services. To the extent the Defendant seeks summary judgment on the basis that the transaction was purely real estate and outside the scope of the CSPA, the motion is granted. Plaintiffs' motion on the CSPA claim is denied.

The Court also concludes that Equicredit is entitled to summary judgment on Plaintiff's theory of derivative liability under the CSPA. As this Court has previously set forth, Plaintiffs seek to hold Equicredit liable for the alleged poor work performed by Defendant OBR on the theory that Equicredit is the holder of the contract entered into with OBR. The contract provides that "[a]ny holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder." (*Exhibit A* attached to *Amended Complaint*). Plaintiffs claim that Equicredit falls within this provision because the contract with

OBR was allegedly assigned to Equicredit by former Defendant Vicki Bartoli.

■ Bartoli testified on deposition, however, in lending money for the transaction, Equicredit was unaware of the home improvement contract. (*Bartoli Deposition* at 57–58). Further, there is no evidence in the record that the contract was assigned by OBR to Equicredit. In the absence of evidence that the contract was assigned to Equicredit, the Court concludes that Plaintiff's theory of derivative liability cannot succeed. Consequently, the Court concludes that Equicredit is entitled to summary judgment on Plaintiffs' theory of derivative liability under the CSPA. The Plaintiffs' motion for summary judgment is denied.

### 2. TILA Claim

Plaintiffs seek relief against Defendant Equicredit under the Federal Truth in Lending Act, 15 U.S.C. § 1601, *et seq.* Plaintiffs allege that the Defendant violated the "material disclosure, notification, recission right and substantive requirements" of the statute as well as Regulation Z. (*Plaintiffs' Amended Complaint* at ¶ 74). In their Motion for Summary Judgment, Plaintiffs claim that they are entitled to a recission of the loan agreement. Defendant Equicredit also moves for summary judgment on the TILA claim.

The stated purpose of the TILA is

to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and to avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair billing and credit practices.

15 U.S.C. § 1605(a). To implement the purpose of the statute, Congress has authorized the Federal Reserve Board to promulgate rules and regulations, codified at Regulation Z, 12 C.F.R. § 226, *et seq.*

Plaintiffs claim that Equicredit violated 15 U.S.C. § 1635(a), which provides:

**(a) Disclosure of obligor's right to rescind**

Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and recission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

Plaintiffs contracted with Defendant OBR for $17,000 of work, payable at $150 per month for 360 months at 9.75% interest rate. (Exhibit 1 attached to *Plaintiffs' Motion for Summary Judgment*). Plaintiffs claim that the contract does not contain a notice of the right to rescind and that, therefore, the time is extended by 15 U.S.C. § 1635(f), which states:

**(f) Time limit for exercise of right**

An obligor's right of recission shall expire three years after the date of consummation of the transaction or upon

the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor. . . .

15 U.S.C. § 1635(f).

The Plaintiffs' contract with OBR does, however, clearly state in accordance with 15 U.S.C. § 1653(a):

> You, the Buyer, may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction. See the attached notice of cancellation form for an explanation of this right.

*Id.*

■ Thus, to the extent Plaintiffs' TILA claim rests upon the assertion that notice of the right to rescind was not provided by OBR, the argument is misplaced. Further, there is no basis upon which to hold Equicredit liable even if such notice was not provided because there is no evidence in the record that Plaintiffs' contract with OBR was assigned to Equicredit. In sum, the Court concludes that Equicredit is entitled to summary judgment on this portion of Plaintiffs' TILA claim.

In their Motion for Summary Judgment, Plaintiffs also claim that they are entitled to rescission because Equicredit allegedly failed to provide two notices pursuant to 12 C.F.R. § 226.23(b)(1), with regard not to the Plaintiffs' contract with OBR but in conjunction with the making of the mortgage loan. This provision states:

> (b)(1) *Notice of right to rescind.* In a transaction subject to recission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic com-

munication as provided in § 226.36(b)). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

> (i) The retention or acquisition of a security interest in the consumer's principal dwelling.

> (ii) The consumer's right to rescind the transaction.

> (iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

> (iv) The effects of rescission, as described in paragraph (d) of this section.

> (v) The date the rescission period expires.

12 C.F.R. § 226.23(b)(1).

Plaintiffs argue that, as a consequence of Equicredit's alleged failure to comply with the foregoing, they are entitled to rescind the loan agreement in accordance with 15 U.S.C. § 1635(f). Plaintiffs claim that they received only one copy, rather than two copies of the notice of the right to rescind.

Equicredit urges the Court to disregard this claim because it has not been pled or identified in Defendant's requests for answers to interrogatories.[1] In any event, Equicredit argues that it complied with 12 C.F.R. § 226.23(b)(1). Plaintiffs dispute Equicredit's assertion that the purported violation was never identified and maintain that only one notice of the right to rescind was given.

As Plaintiffs point out, the Sixth Circuit has held that, under § 226.23(b)(1), a lender is required to deliver two copies of the notice of right to rescind; failure to provide only one rather than two copies re-

---

**1.** In their requests, Defendant asked Plaintiffs in what way Equicredit allegedly violated the TILA. (Exhibit D attached to *Defendant's* *Memorandum contra* ). Plaintiffs claimed that Equicredit failed to comply with 15 U.S.C. § 1639. (Exhibit C, *Id.*).

sults in the extension of the recission right to three years from the date of consummation of the transaction. 12 C.F.R. § 226.23(a)(3); *Weeden v. Auto Workers Credit Union, Inc.*, No. 97–3073, 1999 WL 191430 (6th Cir. March 19, 1999). As the Sixth Circuit has observed, the TILA "must be liberally construed in favor of the borrower in order to effectuate the purpose of the statute—to avoid the uninformed use of credit." *Id.* at *4. *Accord Staley v. Americorp Credit Corp.*, 164 F.Supp.2d 578 (D.Md.2001).

The evidence in this case as to how many notices of the right to rescind were provided to the Plaintiffs is in dispute. In support of their position that only one notice was given, Plaintiffs rely on the testimony of one Carlena Rieser, whom Defendant Equicredit designated as its Rule 30(b)(6) representative. Although Ms. Rieser was not employed by Defendant Equicredit at the time of the closing, on April 9, 1999, she reviewed the documents used at the closing prior to being deposed. (*Rieser Deposition* at 5). According to Rieser, the notice of right to cancel, as well as the other necessary documents, were prepared by the lender and then transmitted to the closing agent for use at closing. (*Id.* at 125). Reiser testified that only one copy of the right to cancel was provided at Plaintiffs' closing. (*Id.* at 128).

In opposition, Equicredit asserts that when Ms. Rieser testified to the foregoing, she misunderstood the question asked. (*Equicredit's Memorandum contra* at 4). In support of its position that two copies of the notice of right to cancel were provided to the Plaintiffs, Equicredit relies on the declarations of two employees of Defendant's Wexford, Pennsylvania office, Bonnie Zwigart and Tara Anderson, who aver that it is the regular custom and practice of Equicredit to provide two copies of the right to cancel for each obligor. According

to Zwigart and Anderson, the Plaintiffs would have received four copies of the notice of right to cancel. (*Zwigart Declaration* at ¶ 6; *Anderson Declaration* at ¶ 6). Further, Anderson avers that she assembled the Plaintiffs' documents and followed this standard procedure. (*Id.* at ¶ 8). Equicredit also relies on the declaration of Ms. Candi Cole, the independent title agent who acted on behalf of Defendant Express Financial Services Corp. at the Plaintiffs' closing. According to Ms. Cole, it was her custom to check the number of copies in the closing package to ensure compliance with the TILA. (*Declaration of Candi Cole* a ¶ 5). Cole avers that she has no reason to believe that the standard procedure was not followed in the Plaintiffs' case. (*Id.* at ¶ 7).

■ As the evidence reveals, a genuine issue of material fact exists as to whether Plaintiffs received one, two or four copies of the notice of right to cancel as required by § 226.23(b)(1). Consequently, both the Plaintiffs' and Defendant Equicredit's motions for summary judgment on this issue are denied.

Defendant also seeks summary judgment on Plaintiff's claims for violations of 15 U.S.C. § 1638(b)(1) and § 1639. The former provision outlines the form and timing for disclosures for residential mortgage transactions; the latter provision sets forth certain other requirements for mortgages. Plaintiffs do not respond to Defendant's motion on § 1638(b)(1). Consequently, the motion is granted as to this provision.

Section 1639  provides:

(a) Disclosures

(1) Specific disclosures

In addition to other disclosures required under this subchapter, for each mortgage referred to in section 1602(aa) of this title, the creditor shall provide the

following disclosures in conspicuous type size:

(A) "You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application.".

(B) "If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan.".

(2) Annual percentage rate

In addition to the disclosures required under paragraph (1), the creditor shall disclose—

(A) in the case of a credit transaction with a fixed rate of interest, the annual percentage rate and the amount of the regular monthly payment; or

(B) in the case of any other credit transaction, the annual percentage rate of the loan, the amount of the regular monthly payment, a statement that the interest rate and monthly payment may increase, and the amount of the maximum monthly payment, based on the maximum interest rate allowed pursuant to section 3806 of Title 12.

(b) Time of disclosures

(1) In general

The disclosures required by this section shall be given not less than 3 business days prior to consummation of the transaction.

15 U.S.C. § 1639(a), (b).

In addition, 12 C.F.R. § 226.32(c) provides:

(c) *Disclosures.* In addition to other disclosures required by this part, in a mortgage subject to this section, the creditor shall disclose the following in conspicuous size type:

(1) *Notices.* The following statement: "You are not required to complete this agreement merely because you have received these disclosures or have signed a loan application. If you obtain this loan, the lender will have a mortgage on your home. You could lose your home, and any money you have put into it, if you do not meet your obligations under the loan."

In this case, Plaintiffs claim that they did not receive the foregoing notices, also referred to as "section 32 disclosures" prior to the closing, as required by § 1639(b)(1). (*Deposition of Martin Hanlin* at 17; *Deposition of Shirley Hanlin* at 52).

Defendant Equicredit points out that, at the closing, both Plaintiffs signed a confirmation that they did receive the notices. (*Martin Hanlin Depo.* at 36–37; *Shirley Hanlin Depo.* at 68). Thus, Equicredit argues that under 15 U.S.C. § 1635(c), the Plaintiffs' written acknowledgment of receipt of the notices creates a rebuttable presumption that they were in fact delivered. The Defendant further argues that Plaintiffs have not overcome the presumption.

The statute provides:

**(c) Rebuttable presumption of delivery of required disclosures**

Notwithstanding any rule of evidence, written acknowledgment of receipt of any disclosures required under this subchapter by a person to whom information, forms, and a statement is required to be given pursuant to this section does not more than create a rebuttable presumption of delivery thereof.

15 U.S.C. § 1635(c).

In further support of its position, Equicredit offers the declaration of John Scarp, who was branch manager of Equicredit's Wexford, Pennsylvania office at the time Plaintiffs' loan documents were processed. Scarp avers as follows:

I sent both Martin and Shirley Hanlin two letters containing disclosures about their proposed loan: a March 3, 1999

letter enclosing a Good Faith Estimate and Servicing Disclosure Statement; and a March 19, 1999 letter enclosing a section 32 notice. True and accurate copies of the letters mailed to the Hanlins are attached to this Declaration as Exhibits 1 and 2, respectively. These two letters were properly addressed with the Hanlins' address. These letters and the enclosed disclosures were sent consistent with the procedures [of the Wexford office] and I have no reason to believe otherwise.

Neither the March 3, 1999 letter nor the March 19, 1999 letter was returned to our branch office as undelivered or undeliverable. I have no reason to believe either letter was not mailed or not received by the Hanlins. If a letter had come back undelivered, we would have resent it or otherwise ensured that the letter and disclosures were sent.

*Declaration of John Scarp* at ¶¶ 7–8.

■ Equicredit correctly asserts that, under § 1635(c), Plaintiffs' written acknowledgment of receipt of the disclosures creates a rebuttable presumption that the disclosures were delivered. However, the presumption is rebutted by testimony of the obligor that the disclosures were not given, even when the disclosure statement is produced. *Pinder v. Lomas and Nettleton Co.*, 83 B.R. 905, 912 (Bkrtcy.E.D.Pa. 1988); *In re Jackson*, 245 B.R. 23 (Bkrtcy. E.D.Pa.2000). Thus, although Equicredit has produced copies of the section 32 disclosures allegedly sent to the Hanlins prior to the closing, because the Hanlins have testified that they did not receive the disclosures, the Court finds presumption of § 1635(c) has been rebutted. A genuine issue of material fact exists as to whether the section 32 disclosures were made in accordance with the TILA. Consequently, neither the Plaintiffs nor Defendant Equicredit are entitled to summary judgment on Plaintiffs' § 1639 claim.

### 3. Purported Violation of R.C. § 1321.52

Equicredit seeks summary judgment to the extent that Plaintiffs allege that it is not licensed under § 1321.52, which provides:

(A)(1) No person, on that person's own behalf or on behalf of any other person, shall do either of the following without having first obtained a certificate of registration from the division of financial institutions:

(a) Advertise, solicit, or hold out that the person is engaged in the business of making loans secured by a mortgage on a borrower's real estate which is other than a first lien on the real estate;

(b) Engage in the business of lending or collecting the person's own or another person's money, credit, or choses in action for such loans.

(2) Each person issued a certificate is subject to all the rules prescribed under sections 1321.51 to 1321.60 of the Revised Code.

(B) All loans made to persons who at the time are residents of this state are considered as made within this state and subject to the laws of this state, regardless of any statement in the contract or note to the contrary.

(C) A registrant may make unsecured loans, loans secured by a mortgage on a borrower's real estate which is a first lien or other than a first lien on the real estate, loans secured by other than real estate, and loans secured by any combination of mortgages and security interests, on terms and conditions provided by sections 1321.51 to 1321.60 of the Revised Code.

(D)(1) If a lender that is subject to sections 1321.51 to 1321.60 of the Revised Code makes a loan in violation of division (A)(1) of this section, the lender has no right to collect, receive, or retain any interest or charges on that loan.

(2) If a registrant applies to the division for a renewal of the registrant's certificate after the date required by division (A)(4) of section 1321.53 of the Revised Code, but prior to the first day of August of that year, and the division approves the application, division (D)(1) of this section does not apply with respect to any loan made by the registrant while the registrant's certificate was expired.

R.C. § 1321.52.

Equicredit argues that the foregoing applies to second mortgages, not first mortgages such as the Plaintiffs obtained. Nevertheless, Equicredit submits that it is in fact registered under § 1321.52. (*See State of Ohio Dept. of Commerce Certificate* attached as Exhibit 1 to *Declaration of James B. Dodd*). In view of the evidence of Defendant's registration under § 1321.52, the Court finds no violation of the statute. Thus, to the extent Plaintiffs assert such a violation, Equicredit is entitled to summary judgment.

### IV.

In light of the foregoing, Plaintiffs' Motion for Summary Judgment against Defendant Ohio Builders and Remodelers, Inc. (**Doc.# 72**) is **GRANTED.** Pursuant to Fed.R.Civ.P. 54(b) and upon this Court's finding that there is no reason for delay, the Clerk is hereby **DIRECTED** to enter Judgment by Default against Defendant OBR and in favor of Plaintiffs in the amount of **$209,408.48.**

Plaintiffs' Motion for Summary Judgment against Defendant Equicredit (**Doc.# 85**) is **DENIED in part** and Defendant Equicredit's Motion for Summary Judgment (**Doc.# 78**) is **GRANTED in part and DENIED in part.**

**IT IS SO ORDERED.**