838 A.2d 392

**Walter THRASHER**

v.

**HOMECOMINGS FINANCIAL NETWORK, INC.**

**No. 2712, Sept. Term 2002.**

Court of Special Appeals of Maryland.

Dec. 11, 2003.

78

Scott C. Borison (Douglas B. Bowman, Legg Law Firm, LLC, on the brief), Frederick, for Appellant.

Martin B. Ellis (J. Steven Lovejoy, William H, Kirkpatrick, II, Shumaker Williams, P.C., on the brief), Towson, for Appellee.

Argued before; KENNEY, ADKINS and DEBORAH S. EYLER, JJ.

KENNEY, Judge.

Walter Thrasher ("Thrasher") appeals from an order of the Circuit Court for Frederick County dismissing a complaint for failure to state a claim. On appeal, Thrasher asks three questions that we have condensed into one and reworded as follows:

> Is there a private cause of action, under Md.Code (2003 Repl. Vol.), § 11–523(b) of the Financial Institutions Article ("FI"), against a licensed mortgage lender who allows a mortgage to be executed at a place for which the person does not have a license to conduct business?

We answer "no" and affirm the judgment of the circuit court.

## PROCEDURAL AND FACTUAL BACKGROUND

Thrasher owns real property located at 1820 Gapland Road in Jefferson, Maryland. On or about November 6, 2000, he executed and delivered a "junior deed of trust" to Homecomings Financial Network, Inc. ("Homecomings") securing a loan with his property.

In a complaint filed September 18, 2002, Thrasher averred that the loan documents were executed at his home and that, in violation of FI § 11–505(e), Homecomings did not have a license to act as a mortgage lender at that location. Citing FI § 11–523(b), Thrasher asserted "that no interest, costs, finders fees, brokers fees or other charges may be collected from [him] on the subject loan and [for] cancellation of the deed of trust."

Homecomings filed a motion to dismiss, arguing that, even if a violation had occurred, there was "simply no private right of action" under FI § 11–523(b). According to Homecomings, that provision of the statute only penalized an "unlicensed" person who made or assisted a borrower in obtaining a mortgage loan and not a "licensed" person who violated a provision of the Maryland Mortgage Lender Law (the "MMLL"). In support of its position, Homecomings cited

*Staley v. Americorp Credit Corp.*, 164 F.Supp.2d 578 (D.Md. 2001). Thrasher responded that Homecomings' license to conduct business at one location did not "create any type of 'color of license' that affords protection to someone who conducts 'unlicensed' activities."

The central issue at the hearing on the motion to dismiss was whether a licensed mortgage lender became an "unlicensed person," under FI § 11–523(b), when conducting business at an unlicensed location. According to Homecomings' attorney, the parties had stipulated that

> at all times relevant to the facts in this case Homecomings ... was a licensed mortgage lender under the [MMLL] and that license was ... for a location that is other than the alleged location being [Thrasher's] home where the loan was actually closed. That is, the second part of the stipulation, is that assuming for the sake of this case that the facts do bear out that the loan was closed in the borrower's home, clearly Homecomings is stipulating that ... that's not a licensed location. [Thrasher's] home, kitchen, living room, whatever it was, is not a licensed location.

Thrasher's attorney clarified the stipulation, stating:

> [W]e don't dispute that [Homecomings] held a license for a particular location. But, [the license] wasn't [for] the borrower's home, and the reason I make the distinction, Your Honor, is just because part of the argument is whether ... having a license at another location gave 'em the right to act anywhere else. Whether they would be considered a licensed lender still or an unlicensed lender if they acted at another location.

The circuit court, in granting the motion, stated that in

> the *Staley* case, the Court did dismiss plaintiff's complaint in part and held that [FI § ]11–505 did not create a private right of action. And there is a distinction here. Being unlicensed initially and then being licensed and violating a provision of holding the settlement in another place where they were not authorized is certainly a difference.
>
> Now, I don't think that [FI § ]11–505 did create a private right of action. I think that the [legislature] intended the

[Commissioner], not private parties, to enforce the licensing provisions of the MMLL. Now, no question that [FI § ]11–523[(b)] does provide for suits against creditors who failed to get a license at all. But it does not allow individual [borrowers] to enforce the licensing provisions of the MMLL. And in fact, if it did, that would be inconsistent with the administrative scheme [that] the [legislature] established to enforce the MMLL.

This timely appeal followed.

## DISCUSSION

Thrasher argues that the circuit court erred in its determination (1) that there was no private cause of action, under FI § 11–523(b), against a licensed mortgage lender who allows a secondary mortgage to be executed at a place for which the person is not licensed to conduct business; (2) that a license under the MMLL allows the holder to conduct business at any location; and (3) that Homecoming "was licensed to close a second mortgage loan" at his home. Homecomings counters that the court correctly found no private cause of action, but that it did not make the determinations contained in Thrasher's second and third assignments of error.

Contrary to Thrasher's contention, the circuit court determined that FI § 11–523(b) created a private cause of action only against lenders who had failed to obtain a license, and not against licensed lenders who violated the MMLL. The court did not hold that a licensed lender could conduct business at any location or that Homecomings was "licensed to close a second mortgage loan" at Thrasher's home. Rather, the court determined that such license violations were to be enforced by the Commissioner, and not private parties.

In *Staley*, the federal district court determined that there is no private right of action, either express or implied, under FI § 11–523(b), against a licensed mortgage lender violating the MMLL.[1] In this case, appellant contends that Homecom-

---

**1.** A private action was "limited to suits against creditors that fail to get a license at all, in contrast to licensed lenders that violate the licensing provisions." *Staley*, 164 F.Supp.2d at 581, n. 2.

ings was in effect an "unlicensed" lender when the documents relating to the loan transaction were executed because they were not executed at a licensed place of business. Therefore, he claims the right to the private cause of action that is expressly created by FI § 11–523(b).

" '[T]he cardinal rule of statutory construction is to ascertain and effectuate legislative intention.' " *State v. Green*, 367 Md. 61, 81, 785 A.2d 1275 (2001) (citations omitted). When we interpret a statute, our starting point is always the text of the statute. *W. Corr. Inst. v. Geiger*, 371 Md. 125, 141, 807 A.2d 32 (2002). "[I]f the plain meaning of the statutory language is clear and unambiguous, and consistent with both the broad purposes of the legislation, and the specific purpose of the provision being interpreted, our inquiry is at an end." *Breitenbach v. N.B. Handy Co.*, 366 Md. 467, 473, 784 A.2d 569 (2001). Nevertheless, the plain meaning rule is "elastic, rather than cast in stone[,]" and if "persuasive evidence exists outside the plain text of the statute, we do not turn a blind eye to it." *Adamson v. Correctional Med. Servs.*, 359 Md. 238, 251, 753 A.2d 501 (2000) (citing *Kaczorowski v. Baltimore*, 309 Md. 505, 513–14, 525 A.2d 628 (1987)).

In determining a statute's meaning, we are permitted to "consider the statute's structure, including its title, and how the statute relates to other laws." *McKay v. Dep't of Pub. Safety & Corr. Servs.*, 150 Md.App. 182, 194, 819 A.2d 1088 (2003). We may "consider the context in which a statute appears, including related statutes and legislative history." *Ridge Heating, Air Conditioning & Plumbing, Inc. v. Brennen*, 366 Md. 336, 350–51, 783 A.2d 691 (2001). Also, we may "consider the particular problem or problems the legislature was addressing, and the objectives it sought to attain." *Sinai Hospital of Baltimore, Inc. v. Department of Employment & Training*, 309 Md. 28, 40, 522 A.2d 382 (1987). This enables us to put the statute in controversy in its proper context and thereby "avoid unreasonable or illogical results that defy common sense." *Adamson*, 359 Md. at 252, 753 A.2d 501.

With the codification of the MMLL, the legislature created a comprehensive licensing scheme to regulate mortgage lenders. Under the MMLL, subject to certain exceptions not relevant to this case, a person may not act as a mortgage lender unless licensed by the Commissioner of Financial Regulation (the "Commissioner") in the Department of Labor, Licensing and Regulation. FI § 11–504. The license authorizes a person to act as a mortgage lender at a licensed place of business, and that person "may not conduct any mortgage loan business at any location or under any name different from the address and name that appears on the person's license." FI § 11–505(d)(2). Only one place of business may be "maintained under any 1 license," FI § 11–505(b), and a mortgage lender must obtain a license for each location at which a mortgage loan business will be conducted. FI § 11–505(c). The statute expressly prohibits a "licensee" from allowing "any note, or loan contract, mortgage, or evidence of indebtedness secured by a secondary mortgage or deed of trust to be signed or executed at any place for which the person does not have a license...." FI § 11–505(e).

The Commissioner is authorized to suspend or revoke a license if the licensee

(1) Makes any material misstatement in an application for a license;

(2) Is convicted under the laws of the United States or of any state of:

(i) A felony; or

(ii) A misdemeanor that is directly related to the fitness and qualification of the person to engage in the mortgage lending business;

(3) In connection with any mortgage loan or loan application transaction:

(i) Commits any fraud;

(ii) Engages in any illegal or dishonest activities; or

(iii) Misrepresents or fails to disclose any material facts to anyone entitled to that information;

(4) *Violates any provision of this subtitle or any rule or regulation adopted under it or any other law regulating mortgage loan lending in the State;* or

(5) Otherwise demonstrates unworthiness, bad faith, dishonesty, or any other quality that indicates that the business of the licensee has not been or will not be conducted honestly, fairly, equitably, and efficiently.

FI § 11–517(a) (emphasis added).

The Commissioner is given broad enforcement powers, including imposition of civil fines and the issuance of orders to licensees to cease and desist from illegal actions or to take affirmative actions to correct their illegal actions. FI § 11–517(c). The Commissioner's orders may be enforced by a circuit court. FI § 11–517(c) and (d).

Moreover, under FI § 11–523(a), a person who "willfully violates" any provision is guilty of a felony and subject to a fine not exceeding $50,000 and/or imprisonment not exceeding ten years. Pursuant to FI § 11–523(c), a person who misappropriates or converts money "rightfully belonging to a borrower" or "commits any fraudulent act in the course of engaging in the mortgage lending business" is guilty of a felony and subject to a fine not exceeding $100,000 and/or imprisonment not exceeding fifteen years.

■ Clearly, the statute creates a private cause of action against an unlicensed person. Under FI § 11–523(b), any unlicensed person

who is not exempt from licensing under this subtitle who makes or assists a borrower in obtaining a mortgage loan in violation of this subtitle may collect only the principal amount of the loan and may not collect any interest, costs, finders fees, broker fees, or other charges with respect to the loan.

The MMLL does not define an "unlicensed person," but the terms "license" and "person" are defined. A license is "issued by the Commissioner ... to authorize a person to engage in business as a mortgage lender." FI § 11–501(f). A "person"

is defined as "an individual, corporation, business trust, estate, trust, partnership, association, 2 or more persons having a joint or common interest, or any other legal or commercial entity." FI § 11–501(m). It follows, then, that an "unlicensed person" is a person who does not have a license to engage in business as a mortgage lender.

To be sure, a license issued by the Commissioner only "authorizes the licensee to act as a mortgage lender under the license at the licensed place of business." FI § 11–505(a). Moreover, the law expressly provides that a "*licensee* may not allow any note, or loan contract, mortgage, or evidence of indebtedness secured by a secondary mortgage or deed of trust to be signed or executed at any place for which the person does not have a license," except at certain specified locations under certain circumstances. FI § 11–505(e) (emphasis added).

Assuming the truth of the allegations of the complaint, the licensee violated a provision of the subtitle and is subject to suspension or revocation of its license. FI § 11–517(a)(4). It would appear that the Commissioner also could require Homecomings "to take affirmative action to correct the violation including the restitution of money or property to any person aggrieved by the violation." FI § 11–517(c)(1)(i)(2).

On the other hand, the MMLL does not automatically transform a licensee who allows loan documents to be executed at a location other than at the person's "licensed place of business" into an "unlicensed person." Although the violation of this provision may result in the suspension or revocation of a license, the licensee remains licensed until the license is actually suspended or revoked by the Commissioner.

Because Homecomings was not an "unlicensed person," appellant cannot rely on a cause of action created by FI § 11–523(b). In addition, FI § 11–523(b) does not create a private cause of action against a licensed mortgage lender who allows a mortgage to be executed at a place for which the person does not have a license to conduct business. Therefore, the circuit court did not err in dismissing appellant's complaint.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**